IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JON JEFFERY HERRING,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

    Defendant.

Case No. 6:15-cv-01453-CL

OPINION AND ORDER

MARK D. CLARKE, Magistrate Judge.

    Plaintiff Jon Jeffery Herring ("Plaintiff") seeks judicial review of the Commissioner's final decision denying his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). All parties have consented to allow a Magistrate Judge to enter final orders and judgments in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the decision is AFFIRMED.

1 – OPINION AND ORDER

## BACKGROUND

Plaintiff was born June 1963, and has a seventh grade education. Tr. 31. He worked as a sanitation worker and a self-employed glass-blower. Tr. 35, 66. Plaintiff protectively filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") on September 22, 2011, alleging disability due to back impairments, inguinal hernias, toe impairments, and hypertension beginning May 24, 2011. Tr. 182. Plaintiff was insured under Title II of the Social Security Act through December 31, 2013. Tr. 219. Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ"). Plaintiff appeared and testified before ALJ MaryKay Rauenzahn on October 8, 2013, in Eugene, OR. Tr. 26. On December 9, 2013, the ALJ determined Plaintiff was not disabled. Tr. 8. On June 15, 2015, the Appeals Council denied Plaintiff's subsequent request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A plaintiff is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423(d)(l)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(1); 416.920(a)(4)(1). This activity is work involving significant

mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(1); 416.920(a)(4)(I).If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. ld.

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the

claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.; see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett,* 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ evaluated Plaintiff's claim by performing the five-step sequential analysis. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity ("SGA") after his alleged onset date of May 24, 2011. Tr. 13. Despite this finding, the ALJ noted there had been no significant change in Plaintiff's income since before the alleged onset date, and Plaintiff's pre-reduction earnings reflected an ability to perform work at an SGA level. *Id.* At step two, the ALJ found Plaintiff had the following severe impairments: lumbar degenerative disc disease with left-side radiculopathy, bilateral inguinal hernias, osteoarthritis in the MTP joints of the bilateral feet, and obesity. Tr. 14. At step three, the ALJ found Plaintiff's impairments did not meet or medically equal a listed impairment because no treating or examining physician documented medical findings equivalent in severity to the criteria of the listed impairments. *Id.*

The ALJ then assessed Plaintiff's RFC and determined that Plaintiff has the capacity to lift, carry, and push/pull up to twenty-five pounds occasionally and ten pounds frequently. *Id.* Plaintiff can stand/walk for four hours and sit for four hours in an eight hour workday with normal breaks, but will require the freedom to change positions every 30 minutes while

remaining on task. *Id.* Plaintiff cannot climb ladders, ropes, or scaffolds, but is able to perform all other postural activities on at least an occasional basis. *Id.* Additionally, the ALJ determined Plaintiff should not ambulate over uneven terrain or be exposed to unprotected heights. *Id.* The ALJ determined that Plaintiff's RFC did not preclude him from performing his past work as an artistic glassblower. Tr. 20. For this reason, the ALJ found Plaintiff not disabled, as defined by the Social Security Act. Tr. 21.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). In reviewing the Commissioner's alleged errors, this court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, "cannot affirm the Commissioner's decision on a ground that the Administration did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56.

"[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) improperly rejecting Plaintiff's testimony at the second step of the credibility analysis; (2) improperly rejecting the opinions of treating and examining medical sources; and (3) posing an invalid hypothetical to the vocational expert.

### I.    Credibility

Plaintiff contends that at the second step of the credibility analysis, the ALJ failed to articulate a clear and convincing reason for rejecting his testimony regarding the extent and severity of his impairments. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews,* 53 F.3d at 1039. The ALJ's credibility findings must be supported by specific, cogent reasoning. *Reddick v. Chafer,* 157 F.3d 715, 722 (9th Cir. 1998). Unless there is affirmative evidence showing that the plaintiff is malingering, the ALJ's reason for rejecting the plaintiff's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the plaintiff's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F.3d at 724; *See also Holohan v. Massinari,* 246 F.3d 1195, 1208 (9th Cir. 2001). While an ALJ cannot reject the severity of subjective complaints solely on the lack of objective medical evidence; the ALJ may nonetheless look to the medical record for inconsistencies. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999).

The ALJ considered the entire case record and provided legally sufficient reasons as to why Plaintiff's statements concerning intensity, persistence, and the limiting effects of his

symptoms were not entirely credible. First, the ALJ found Plaintiff's subjective symptom testimony to be inconsistent with the statements he made to medical providers and with objective medical findings. Tr. 16, 18. The following examples support this finding.

On January 10, 2012, Plaintiff underwent a left L3-L4 microdiscectomy performed by Erik Hauck, M.D., to treat his multilevel degenerative disc disease. Tr. 15. Plaintiff reported to Dr. Hauck that he felt much improved after the procedure. Tr. 16. Dr. Hauck noted that Plaintiff's left leg weakness was essentially resolved and he was able to walk unassisted within three to four weeks post-microdiscectomy. *Id.* In August 2012, approximately seven months later, Dr. Hauck reported that Plaintiff continued to show improvement, was able to squat almost fully on only his left leg, his straight leg raise ("SLR") test was negative, and his muscle mass was almost normal again. *Id.* Despite these recorded improvements, Plaintiff testified at the hearing that his symptoms returned one week after surgery. Tr. 19.

Additionally, Plaintiff testified that his left leg had atrophied to the point of being half the size of his right and that he still experiences pain in those leg muscles. Tr. 18, 58-9. Plaintiff further testified that he needed to use crutches periodically due to intermittent left leg weakness. Tr. 18. However, the ALJ noted that no medical records support his atrophy claims and no significant leg weakness was documented on post-operative physical exams. On August 30, 2012, Dr. Hauck documented that Plaintiff had "rebuilt his quadriceps muscle quite well[,] his reflex has recovered, and overall, he has improved." Tr. 349. Examining doctor, Raymond Nolan, M.D., noted that Plaintiff had normal muscle tone and no evidence of atrophy. Tr. 323. Moreover, the crutches were not prescribed by any medical provider. Tr. 18. Post-operative treatment notes state that Plaintiff was using a front-wheeled walker for a "couple of weeks" and then a cane "for awhile, just for his comfort level." Tr. 351. On February 10, 2012, treatment

7 – OPINION AND ORDER

notes indicated that Plaintiff was no longer using any walking aids, and he made a statement to his doctor that the "buckling of his left leg that he used to experience prior to his surgery, he is not experiencing now." *Id.* In June, 2013, over a year later, Dr. Dodson indicated that Plaintiff's gait was essentially normal. Tr. 353. Overall, the ALJ was more persuaded by Plaintiff's statements made in pursuit of medical treatment than those made in pursuit of disability benefits. Tr. 19. The ALJ adequately identified the portions of Plaintiff's testimony that she found not credible and also identified the medical evidence that undermined Plaintiff's testimony.

In addition to the inconsistencies just discussed, the ALJ provided further reasoning as to why she found Plaintiff's symptom testimony less than credible. It is undisputed that Plaintiff continues to work as a glassblower. Tr. 31. Plaintiff's 2013 profit/loss statement showed year-to-date earnings of $23,000 with $17,000+ in expenses. Tr. 13. The ALJ determined that Plaintiff's pre-reduction earnings, averaged out by $45 per glass piece, resulted in an average monthly production of more than 40 glass pieces per month. Tr. 18. This monthly average is equivalent to Plaintiff's production rate prior to the alleged onset date. *Id.* Therefore, the ALJ found Plaintiff's ongoing, significant, and predominantly unchanged work activities undermined his asserted inability to perform work-related activities. Tr. 18, 19. The ALJ also determined that Plaintiff's testimony regarding his daily activities suggested a higher functional capacity than alleged. Tr. 18. Finally, The ALJ found Plaintiff's choice to attend a weeklong church conference in Maui during September, 2013, rather than schedule a hearing in this matter, discredited his assertions of chronic, disabling symptoms. Tr. 19.

There is overwhelming evidence to support the ALJ's credibility findings. The ALJ identified clear and convincing reasons for why Plaintiff's testimony detracted from his

credibility and supported her reasoning with substantial evidence from the record. Therefore, the ALJ made a legally sufficient credibility finding.

## II. Medical Evidence

Plaintiff argues the ALJ improperly rejected the opinions of treating and examining medical sources. An ALJ may properly reject a treating or examining physician's uncontradicted medical opinion only for "clear and convincing reasons." *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995). When the treating or examining physician's opinion has been contradicted, however, it may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). This can be done by setting out a detailed and thorough summary of the facts, providing an appropriate interpretation thereof, and making findings. *See Megallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). For the reasons stated herein, the ALJ provided clear and convincing reasons for giving less weight to the opinions of Dr. Dodson and Dr. Nolan.

### a. Anthony Dodson, M.D.

The ALJ found that Dr. Dodson's treatment notes did not contain any objective findings that would support the degree of limitation identified in Dr. Dodson's completed questionnaire. Tr. 19. Plaintiff established care with Dr. Dodson in December 2012. Tr. 16. In March 2013, Plaintiff insisted that his pain levels were only partially controlled by his oxycodone medication and he was unable to sustain more than six hours of work per day. Tr. 16, 358. Plaintiff expressed to Dr. Dodson that there were also days when he felt incapable of working at all. Tr.

9 – OPINION AND ORDER

16, 358. Upon a physical examination, Dr. Dodson noted that Plaintiff continues to show pain in the lower back, but this was "essentially unchanged from last visit," and his leg strength appeared normal. Tr. 358. Dr. Dodson did not record any objective findings that support Plaintiff's complaints of increased pain. *Id.* In October 2013, Dr. Dodson responded to a questionnaire sent to him by Plaintiff's representative. Tr. 374-77. Dr. Dodson checked a box indicating that it was "medically probable that since May 2011, Mr. Herring [suffered] increasing pain in his low back, left leg, and toes, as well as weakness and numbness in his left leg . . . " Tr. 375. Dr. Dodson provided no written comments following any of the checked boxes to support his conclusions. Tr. 374-77.

The ALJ considered Dr. Dodson's medical opinion in reaching Plaintiff's RFC, but ultimately gave his opinion little weight for the following reasons. First, the ALJ found that records provided by Dr. Dodson did not contain objective findings that supported the degree of limitation Plaintiff identified. Tr. 19. Second, Dr. Dodson failed to include any supportive clinical findings or functional analysis of Plaintiff's work capacity to support his completed checkbox questionnaire. *Id.* Third, Dr. Dodson offered an opinion of Plaintiff's functioning back to May 2011, even though he did not start treating Plaintiff until December 2012. Tr. 19, 16. Finally, Plaintiff's testimony and the medical opinion of treating physician, Dr. Hauck, failed to support the severity of Dr. Dodson's findings. *Id.* The ALJ provided an adequate summary of the medical records from Dr. Dodson and properly determined that Dr. Dodson's medical opinion was conclusory and unsupported by objective medical findings. The ALJ's rejection of Dr. Dodson's opinion is clear, convincing, and supported by substantial evidence.

### b. Raymond Nolan, M.D., Ph.D., P.C.

The ALJ considered and gave some weight to Dr. Nolan's medical opinion, but ultimately found that that the totality of the evidentiary record warranted different limitations for Plaintiff's RFC. Tr. 19. Plaintiff claims the ALJ made a reversible error by discounting critical portions of Dr. Nolan's medical assessment. Pl. Br. at 12. Plaintiff argues the ALJ's RFC determination was unsupported by evidence in the record and she conflated or confused Plaintiff's plantar fasciitis with the osteoarthrosis in his MTP joints. *Id.* After review of both the ALJ's decision and the examination notes from Dr. Nolan, there is no indication that any such conflation or confusion existed when the ALJ made her findings. The ALJ provided clear and convincing reasons for rejecting portions of Dr. Nolan's medical assessment and modifying Plaintiff's RFC.

In March 2012, Dr. Nolan performed a one-time administrative examination on Plaintiff. Tr. 322. Dr. Nolan noted that Plaintiff was "[a]ble to go from sitting to standing without difficulty, [and] able to walk on toes and heels." *Id.* Dr. Nolan also noted "[t]here is no tenderness to palpation of the plantar surface of either foot. [Plaintiff] has prominent deformity involving the right first MTP joint region and a more limited deformity on the left side at that joint." Tr. 323. Dr. Nolan determined that Plaintiff should limit lifting and carrying to ten pounds on a frequent basis, twenty pounds on occasion, should be able to sit for at least six hours in an eight hour work day, and stand or walk at least two hours in an eight hour day. *Id.* During periods when Plaintiff may experience a "flare" of arthritic pain in his MTP joints, Dr. Nolan suggested Plaintiff should temporarily limit his standing or walking to less than one hour in an eight hour work day. *Id.*

11 – OPINION AND ORDER

The ALJ did not reject Dr. Nolan's findings, but instead modified Plaintiff's RFC based on the totality of the evidentiary record. Tr. 19. The ALJ increased the occasional weight limit from 20 pounds to 25 pounds based on Plaintiff's testimony at the hearing. *Id.* Plaintiff testified, "The doctors told me not to lift, I think, more than 20 pounds at a time but, I mean, I suppose my arms are, you know, strong enough I could probably lift more than that." Tr. 44. The ALJ's reasoning for increasing the amount of weight that Plaintiff can lift on occasion is not only clear and convincing, but adequately supported by Plaintiff's testimony.

The ALJ increased Plaintiff's total standing/walking in any given workday from two hours to four hours. Tr. 19. Plaintiff argues that the ALJ's reasoning for increasing his standing/walking capacity is an error because she failed to consider Plaintiff's osteoarthritis. Pl. Br. at 12. Plaintiff's argument is unconvincing because the ALJ did consider Plaintiff's osteoarthritis when she noted "freedom to change positions throughout the workday would allow [Plaintiff] to spend the majority of his workday in a seated position during times when he experiences a flare up of foot pain." Tr. 19. The ALJ's assessment of Plaintiff's capacity to stand/walk with the freedom to change positions is also supported by Plaintiff's testimony:

> Q: So what if we gave you a stool and told you you could sit, stand, whatever you wanted to? If it hurt you could stand up, if you hurt you could sit down, but you just, you need to keep working there in that packaging job. Why couldn't you do that?
> A: Well, I suppose you could if you had enough orders, I suppose.

Tr. 39.

> A: ... I walk to the store and then halfway back I've got to like sit down and take a break because ---
> Q: How far is the store?
> A: Oh, I don't know. Four or five blocks, maybe.
> Q: So you can go four [or] five blocks there, walk around the store, and make it halfway back?
> A: About halfway back, yeah ...

Tr. 40.

12 – OPINION AND ORDER

The ALJ has provided clear and convincing reasoning as to why she modified Dr. Nolan's assessment of Plaintiff's work-related capacity, and her reasoning is supported by substantial evidence in the record. Plaintiff failed to identify any reversible error.

## III. Hypothetical Question to the Vocational Expert

The Vocational Expert ("VE") testified that Plaintiff would be able to perform the work of an artistic glassblower as generally and actually performed, and the ALJ agreed based on the totality of the evidence. Tr. 20. Plaintiff argues that the ALJ's reliance on the VE's testimony was an error because the hypothetical presented to the VE did not include all of Plaintiff's limitations. Pl. Br. at 19. The ALJ's hypothetical was proper because it contained all limitations that the ALJ found credible and supported by substantial evidence in the record.

When finding Plaintiff's residual functional capacity and presenting the hypothetical to the VE, the ALJ was not required to include any opinion evidence that had been properly discounted. *Batson*, 359 F.3d at 1197. It is proper for an ALJ to limit a hypothetical to only those restrictions found to be supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005) (citing *Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir.1989)). The ALJ is ultimately responsible for resolving conflicts in the medical testimony and translating the plaintiff's impairments into concrete functional limitations. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). There was no error in the ALJ's assessment of Plaintiff's symptom testimony or the medical evidence presented in the record. It was proper for the ALJ to limit the hypothetical and not include properly discounted evidence as discussed above. Therefore, the ALJ's reliance on the VE's testimony in response to the hypothetical was without error.

## CONCLUSION

Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's final decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 12 day of August 2016.

Mark D. Clarke
United States Magistrate Judge